IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 OCT 23   AM 8: 59

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
                    DEPUTY

NUVASIVE, INC.,

                              Plaintiff,

-vs-                                                        Case No.  A-12-CA-1156-SS

LAURA LEWIS,

                              Defendant.

_____

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Laura Lewis's Application for Attorneys' Fees and Costs [#171], Plaintiff NuVasive, Inc.'s Response [#179], and Defendant Lewis's Reply [#183]; Plaintiff NuVasive, Inc.'s Motion for Attorneys' Fees and Costs [#175], and Defendant Lewis's Response [#180]; and Plaintiff NuVasive, Inc.'s Bill of Costs [#176].  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

Plaintiff NuVasive, Inc. filed this lawsuit against Defendant Laura Lewis, asserting four causes of action: Count I—breach of fiduciary duty; Count II—breach of contract; Count III—common law misappropriation of trade secrets; and Count IV—violation of the Texas Theft Liability Act (TTLA).  The parties tried the case to a jury from July 7 to July 11, 2014.  After NuVasive rested its case-in-chief, Lewis orally moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure, and the Court granted the motion with respect to Counts I, III, and IV.  Consequently, the only issue ultimately submitted to the jury was whether

Lewis breached her employment contract with NuVasive. The jury concluded Lewis had breached

her contract and awarded NuVasive damages in the amount of $164,571.43. The parties have now

filed cross-motions for attorneys' fees and costs.

## Analysis

### I.  Lewis's Motion for Attorneys' Fees under the TTLA

As the prevailing party on NuVasive's TTLA claim, Lewis argues she is entitled to collect

$265,396.00 in attorneys' fees, an additional $12,500.00 for preparing her application for attorneys'

fees, and $11,571.31 in costs.[1] In the Fifth Circuit, determining reasonable attorneys' fees involves

a two-step process. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995) (citing

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Initially, the district court must determine the

reasonable number of hours expended on the litigation and the reasonable hourly rates for the

participating lawyers." *Id.* at 324 (citing *Hensley*, 461 U.S. at 433). "Then the district court must

multiply the reasonable hours by the reasonable hourly rates." *Id.* (citations omitted). "The product

of this multiplication is the lodestar, which the district court then either accepts or adjusts upward

or downward, depending on the circumstances of the case." *Id.* (citing *Brantley v. Surles*, 804 F.2d

321, 325 (5th Cir. 1986)); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

---

[1]Last year, Texas adopted the Uniform Trade Secrets Act, making it effective on September 1, 2013. S.B. 953, 83rd Leg., R.S., ch. 10, § 1, 2013 Tex. Sess. Law Serv. (the Texas Uniform Trade Secrets Act or TUTSA). TUTSA creates a new chapter 134A in the Civil Practice & Remedies Code that applies to "the misappropriation of a trade secret made on or after the effective date." *Id.* Therefore, because the misappropriation in this case occurred before September 2013, TUTSA was not an available mechanism for NuVasive. Prior to TUTSA, there were two sources of law available to a party who believed its trade secret had been misappropriated: (1) the common law of trade secret misappropriation, and (2) the TTLA. In its Complaint, filed in December 2012, NuVasive asserted causes of action under both, and the Court analyzes Lewis's instant motion for attorney's fees based on the TTLA and the law as it existed prior to the adoption of TUTSA.

In Lewis's application, her lawyers seek $265,396.00 for 699.4 hours of time spent on the TTLA claim, which they represent to be approximately 53% of their total fees expended on the TTLA claim from the filing of the complaint through the jury verdict. *See* Def.'s Appl. Att'ys' Fees & Costs [#171], at 4, 2.  After consideration and review of Lewis's application, the Court agrees Lewis is entitled to a portion of her fees and costs.  The Court, however, disagrees with the amount of hours Lewis's application attributes to the TTLA claim and the resulting lodestar fee of $265,396.00.  The Court reduces Lewis's requested fees and costs for three main reasons: (1) Lewis's lawyers failed to properly segregate the TTLA claim in their calculation of fees as the TTLA claim played a relatively minor role in this case; (2) Lewis's lawyers failed to show the Court a division between work expended on this federal case and the overlapping state case against Lewis's employer, Globus; and (3) Globus is the party actually incurring these fees and costs, not Lewis herself.

A.      **The TTLA claim was not a substantial piece of this case**

The entire basis for Lewis's recovery of attorneys' fees in this breach of contract case is the TTLA claim.  The theory behind NuVasive's TTLA claim is Lewis's alleged theft of NuVasive's trade secrets.  Under the TTLA, "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE § 134.005(b).  "The award of attorney's fees under this section to the prevailing party is mandatory." *Corral–Lerma v. Border Demolition & Envtl., Inc.*, 420 S.W.3d 59, 61 (Tex. App.—El Paso 2012, no pet.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (stating statutes that provide a party "may recover," "shall be awarded," or "is entitled to attorney's fees" are not discretionary)).

Therefore, Lewis is entitled to recover her attorneys' fees incurred in connection with her defense against the TTLA claim.

Conversely, Lewis may not recover for attorneys' fees incurred in connection with non-TTLA claims. "[A] prevailing party must segregate recoverable from unrecoverable attorney's fees in all cases." *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991) (a party seeking to recover attorneys' fees has the burden to show the fees were reasonable and necessary, which, among other things, requires the party to show the fees were incurred on a claim that allows recovery of such fees). "Intertwined facts do not make [unrecoverable] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo*, 212 S.W.3d at 313–14. "The party seeking fees bears the burden of demonstrating the exception applies." *Id.* at 314.

In this case, the central issue was whether Lewis violated her employment agreement, not whether she violated the TTLA by stealing trade secrets. Indeed, Lewis framed the case this same way when she asked the Court to abstain from this federal case because there was "a parallel, duplicative action pending in Travis County District Court filed by the Plaintiff almost two years ago involving identical issues and virtually the same parties." Mot. for Abstention [#10], at 1. In describing the state case, Lewis contended "[t]he primary focus of the discovery to date . . . is Lewis's interaction with Dr. Randall Dryer after Lewis's resignation from NuVasive, which NuVasive alleges violates Lewis's non-disclosure, non-solication, and non-competition agreement. In fact, the central issue at trial in the State Court Action will be whether or not Lewis violated her

employment agreement." *Id.* at 3.  Lewis then noted the federal case "complain[ed] of the very same conduct as described in the State Court Action," and "[w]hile NuVasive had pled additional causes of action against Lewis in this matter (breach of fiduciary duty, breach of contract, misappropriation of trade secrets, violation of the [TTLA]), the focus of NuVasive's claims rely on the same facts alleged in the State Court Action." *Id.* at 3–4.

Despite the central issue in the case being the breach of contract, Lewis's lawyers now seek $265,396.00 for 699.4 hours of time spent on the TTLA claim, which they represent to be only approximately 53% of their total fees expended on the TTLA claim in this case. The Court finds these calculations unreasonable in light of what the parties (and the Court) agree was the actual dispute underlying the case: the breach of the employment agreement.  At trial, the TTLA claim was a minor topic only discussed by four of the ten witnesses who testified as part of NuVasive's case-in-chief, including Keith Valentine, Randall Dryer, Laura Lewis, and Matthew Twite.  Even with respect to these four witnesses, the testimony concerning trade secrets was only a small portion of their overall testimony and required only a few basic questions.  NuVasive's own damages expert provided no testimony regarding any damages resulting specifically from any violations of the TTLA.  As a consequence, the Court granted Lewis's Rule 50 motion with respect to the TTLA claim (and misappropriation of trade secrets claim) primarily because the record did not support any damages related to trade secret theft or misappropriation.  *See* Order of July 11, 2014 [#162].

The affidavits and exhibits attached to Lewis's application fail to explain how 53% of the total fees can be traced to the TTLA claim, and Lewis's lawyers have failed to adequately segregate time and fees dedicated to the TTLA claim from the other claims.  For instance, there is no proof or analysis regarding: (1) which depositions or portions thereof involved questioning regarding the

TTLA claim; (2) which witnesses testified about the TTLA claim at trial and for how long; or (3) which motions, responses, replies, other pleadings or portions thereof related to the TTLA claim. A review of the time entry sheet supposedly documenting Lewis's lawyers' legal work in the case is replete with general entries where there is no evidence regarding what portion of time relates to the TTLA claim, and there is no attempt to segregate any portion of the unrecoverable fees. *See* Def.'s Appl. Att'ys' Fees & Costs [#171-6], Ex. A-4 (Time Entry Sheet).[2]

Counsel for Lewis argues they did segregate the claims to the extent possible, but the TTLA claim and the other three claims are so intertwined as to be inseparable. *See* Def.'s Reply [#183], at 4. The Court rejects this "entanglement" argument as a justification for Lewis's request for $265,396.00. First, the Court simply disagrees because the breach of contract claim—in particular the breach of the non-compete and non-solicitation provisions, which were the focus of this case—is distinguishable from claims regarding trade secrets or confidential information. While the non-disclosure aspect of the breach of contract claim does overlap with the trade secret claims, these issues were minor compared to the non-compete and non-solicit issues, and this overlap did not amount to a complicated obstacle prohibiting meaningful segregation of claims.

Second, Lewis's lawyers have appeared to make minimal effort to actually segregate the TTLA claim in their application for fees. All they appear to have done is rely on their "entanglement" theory, and point out they are only seeking 53% of the fees incurred from the filing

---

[2]Consider the first four entries: (1) 2.0 hours for "Prepare, review and revise answer to complaint; research regarding same"; (2) 1.2 hours for "Review and revise original answer original answer to complaint; additional research regarding same"; (3) 0.3 hours for "Prepare initial draft of requests for production"; and (4) 3.6 hours for "Prepare, review and revise requests for production; deposition notices; interrogatories; review and analyze discovery from other action." Time Entry Sheet, at 1. As another example, the Time Entry Sheet includes all of the time Lewis's three lawyers spent in trial. *See id.* at 6 (Bundren), 18 (Pockers), 21–22 (Stoter). There is no reduction reflecting the minimal time at trial actually spent on the TTLA claim.

of the complaint through the jury's verdict, apparently implying the TTLA claim constituted 53% of this case.  The TTLA claim did not constitute anywhere near 53% of this case, and the Court cannot identify one instance in the Time Entry Sheet where Lewis's lawyers specifically attached a particular legal task to a particular claim.

Finally, the Court notes the Time Entry Sheet only documents the 699.4 hours of work for which Lewis's counsel seeks reimbursement.  Apparently, this is work they contend relates specifically to the TTLA claim or was general work which could not be broken down between the entangled claims.  Lewis's counsel, however, does not provide the Time Entry Sheet documenting the 47% of work they segregated, presumably on the basis it had nothing to do with the TTLA claim and was unrecoverable.  As a consequence, the Court is unable to assess how Lewis's counsel actually segregated the work and what factors went into their decision making.

In sum, Lewis's application for fees fails to adequately recognize the small role the TTLA claim occupied in this case and segregate the work actually done in connection with the TTLA claim from the other causes of action.

**B.      There is significant overlap in legal fees between the state and federal cases**

In addition to failing to segregate legal fees and related services between the TTLA claim and the other claims, Lewis's counsel also failed to segregate their fees between those incurred in the instant federal case and the concurrent state case against Globus.  As of February 19, 2013, the state case, which Lewis characterized as "identical" to the federal case, had been pending for almost two years, and the parties had "exchanged substantial written discovery, taken ten depositions all over the country (including Lewis's deposition) and are scheduling at least seventeen more depositions to occur during the next two months."  Mot. for Abstention [#10], at 3.  Yet in Lewis's application

for fees, instead of maintaining the position the two cases were "identical," her lawyers attempt to re-characterize the two cases, arguing the state case (and all of the related discovery) addressed the breach of contract claims while the federal case dealt mostly with the claims involving trade secrets and confidential information.[3]

The Court rejects this effort to re-brand the two cases. As previously described, the federal case was primarily about the breach of the employment agreement, and the trial's focus on this issue reflects its importance. Likewise, the state case revolves around the breach of contract claim, but despite substantial overlap between the two cases and a significant amount of discovery on the breach of contract claim having already occurred in the state case, Lewis's counsel fails to account for these factors in the application for fees in the instant matter. This failure contributes to a request for fees, which is entirely too high and unhinged from the TTLA claim—the only claim for which Lewis's counsel may recover fees.

## C.  Globus is paying the legal fees and costs on behalf of Lewis

Finally, the Court notes Lewis is not actually paying any of her legal fees or costs. "An award of attorney's fees under the [TTLA] compensates or indemnifies a defendant for the legal expense he incurs in successfully defending against a claim made under the Act." *Corral–Lerma*, 420 S.W.3d at 65. Here, Lewis has not actually "incurred" any legal fees because her new employer, Globus, financed her defense. *See Keever v. Finlan*, 988 S.W.2d 300, 308 (Tex. App.—Dallas 1999, pet. dism'd) (noting case law has defined "incur" to mean "to become liable to pay") (internal

---

[3]For instance, according to the application for attorneys' fees, "NuVasive's allegations that Ms. Lewis stole NuVasive's confidential information and trade secrets permeated the Complaint, the parties' discovery efforts and trial; this was due in large part to the fact that NuVasive had already explored its breach of contract allegations against Ms. Lewis in its state court action against Ms. Lewis's employer." Def.'s Appl. Att'ys' Fees & Costs [#171], at 1.

citation omitted). While the Court does not hold the mere fact Lewis is not paying her own legal fees means she is not entitled to statutory attorneys' fees, the Court does find this fact weighs in favor of reducing the requested fee, especially when the requested fee is as exorbitant as it is in this case.

## D.      Summary of fees along with costs

In sum, the TTLA claim played a bit part in this drama, posed minimal potential threat to Lewis (both from a liability and a damages standpoint), and her lawyers should have been easily able to defeat it. Indeed, the Court ultimately dismissed these claims at the Rule 50 stage based on NuVasive's failure to present sufficient evidence supporting it. Lewis's lawyers cannot reasonably justify $265,396.00 for 699.4 hours of work spent on a TTLA claim dismissed at the Rule 50 stage due to lack of evidence, and the Court declines to award such a fee. Moreover, the same lawyers in this federal case have conducted significant discovery on many overlapping issues in a related state case, yet Lewis's application does not account for this duplication of work. Finally, any award of fees will not actually compensate Lewis, for she is not footing the bill; rather Globus, who happens to be the defendant in the state case, has covered the legal fees and costs in this matter.

While the Court agrees Lewis is entitled to fees on legal work done to defend against the TTLA claim, the Court does not agree with Lewis's requested figure or the method by which her lawyers arrived at this figure. Consequently, the Court is compelled to reduce the fee to an amount more accurately reflecting the TTLA claim's significance. Unfortunately, as described above, Lewis's counsel have failed to indicate to the Court in their Time Entry Sheet any legal services performed which actually specifically relate to defending against the TTLA claim. Therefore the Court must determine the fee to be awarded itself and, based on its review of the record, concludes the appropriate amount of legal fees to be incurred in litigating the TTLA claim was $10,000.00.

Finally, the Court addresses the additional $12,500.00 in fees Lewis's lawyers seek for preparing her application for attorneys' fees, and $11,571.31 in costs. As for the $12,500.00, Lewis's counsel provides no support for this recovery other than a lawyer affidavit stating, "[i]n addition to these fees, Ms. Lewis has incurred attorneys' fees in the amount of at least $12,500 in connection with the preparation of her Application." Def.'s Appl. Att'ys' Fees & Costs [#171-2], Ex. A (Pockers Aff.), ¶ 20. There is no time entry sheet breaking down hours spent on the application, how those hours were utilized, the rates charged, or any other pertinent information. Considering how much the Court reduced counsel's requested fee when actual time sheets were produced, the Court will not simply accept a conclusory statement in a self-serving affidavit regarding fees to which counsel think they are entitled. Because counsel provides no support for collecting the $12,500.00, the Court denies this fee altogether.[4]

As for costs, Lewis seeks to recover $9,311.55 for deposition costs and $2,259.76 for subpoena services. As an initial matter, as explained below in Part III, the Court will not permit recovery of subpoena costs using private process servers, which leaves only deposition costs. The Court will further not allow for deposition costs relating to witnesses other than the four who actually testified about the TTLA claim at trial—Valentine, Lewis, Dryer, and Twite. Furthermore, as explained below in Part III, the Court will not allow recovery of video deposition costs for a witness who appeared in person at trial. Finally, the Court must reduce the costs to be consistent

---

[4]In addition, the Court notes counsel for NuVasive notified the Court at the hearing held on the instant motions he offered to waive NuVasive's fee and costs if Lewis's counsel would do the same. Apparently, Lewis's counsel would not agree to this resolution, which could have eliminated this extra round of briefing altogether. Instead, Lewis's counsel proceeded to rack up another $12,500.00 in attorneys' fees in an effort to recover $265,396.00 in fees on a TTLA claim, which was a tangential issue in the case. And the ultimate result of all this trouble is a $10,000.00 fee award.

with the TTLA's role in the case and does so in the same proportions as done above with respect to attorneys' fees.  Accordingly, the Court permits costs to Lewis in the amount of $90.58.[5]

## II.      NuVasive's Motion for Attorneys' Fees

NuVasive has filed its own application for attorneys' fees, seeking $315,209.03, which it claims represents 70% of the total amount incurred.  As the basis for recovery of its fees, NuVasive relies on the fact the jury found Lewis had breached her employment agreement with NuVasive and awarded her damages.  Specifically, NuVasive relies on Chapter 38 of the Civil Practice and Remedies Code, which awards attorneys' fees to the prevailing party on a breach of contract claim. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.").

Section 15.51 of the Texas Business and Commerce Code, however, governs the award of attorneys' fees for claims of breach of non-competition and non-solicitation clauses.  *See* TEX. BUS. & COMM. CODE § 15.51(c).  NuVasive concedes Texas courts have held section 15.51 of the Texas Business and Commerce Code prevails over Chapter 38 of the Civil Practice and Remedies Code such that an employer is not entitled to recover attorneys' fees if it is the prevailing party for claims of breach of non-competition or non-solicitation clauses.  *See, e.g., Franlink, Inc. v. GJMS Unlimited, Inc.*, 401 S.W.3d 705, 710–12 (Tex. App.—Hous. [14th Dist.] 2013, pet. denied); *Perez v. Tex. Disposal Sys., Inc.*, 103 S.W.3d 591, 592 (Tex. App.—San Antonio 2003, pet. denied).  But NuVasive points out Texas courts have allowed attorneys' fees to a prevailing employer in a breach-

---

[5]The Court arrived at this figure by adding $1,665.00 (Lewis Deposition) + $378.00 (Valentine Deposition) + $405.00 (Valentine Video Deposition) = $2,448.00.  *See* Def.'s Appl. Att'ys' Fees & Costs [#171-7], Ex. A-5.  The Court then multiplied this number by 3.7%, which equals the ratio of $10,000.00 to $265,396.00, and arrived at $90.58.

of-non-disclosure-agreement claim. *See, e.g.*, *RenewData Corp. v. Strickler*, No. 03-05-00273-CV, 2006 WL 504998, at *16–17 (Tex. App.—Austin Mar. 3, 2006, no pet.).

Therefore, if NuVasive prevailed on the breach of contract claim based on the non-compete or non-solicit clause, then it may not recover its attorneys' fees; if it prevailed based on the non-disclosure provision, then it may recover its fees. Therein lies the problem, as it is not clear from the jury's verdict which provision of the employment agreement they found Lewis violated. NuVasive alleged Lewis violated three provisions of her employment agreement: the non-competition, the non-solicitation, and the non-disclosure provisions. The Jury merely answered "Yes" to the question of "Did Lewis fail to comply with the Agreement?" *See* Jury Verdict [#166], at 1. Under NuVasive's view, the proper conclusion is the jury determined Lewis breached all three provisions of the Agreement. Since attorneys' fees are allowed in non-disclosure cases, NuVasive contends it is entitled to its legal fees. Under Lewis's view, it is unclear which provision the jury found Lewis violated, meaning NuVasive cannot meet its burden of showing it prevailed on the non-disclosure claim, and NuVasive is not entitled to its legal fees.

The Court agrees with Lewis. First, NuVasive could have avoided this nebulous outcome by breaking the questions down for the jury. For example, Lewis's proposed questions did break the breach of contract provisions down into separate questions. *See* Def.'s Proposed Jury Instructions & Verdict Form [#125]. In contrast, NuVasive proposed the simple question: "Did Lewis fail to comply with the Agreement?" *See* Pl.'s Proposed Jury Instructions and Verdict Form [#132]. The Court ultimately instructed the jury:

> Specifically, NuVasive alleges Lewis violated the non-competition (Section VII), non-solicitation (Section VI), and non-disclosure (Section II) provisions of the

Agreement. If you find Lewis violated any of these three provisions at issue in the contract, you must unanimously find Lewis violated one or all of these provisions.

Jury Instructions [#163], at 4–5. The Court further adopted NuVasive's single question: "Did Lewis fail to comply with the Agreement?" *Id.* at 5. As a consequence of the question NuVasive proposed (and the Court adopted), it cannot now be determined which provision the jury found Lewis violated.

Second, regardless of whether NuVasive is responsible for the current confusion, the bottom line is it is NuVasive's burden to show it is entitled to fees, which means it is NuVasive's burden to show the jury found Lewis violated the non-disclosure provision. *See Chaparral Tex., L.P. v. W. Dale Morris, Inc.*, No. H-06-2468, 2008 WL 190433, at *10 (S.D. Tex. Jan. 22, 2008) ("A plaintiff seeking attorneys' fees under section 38.001 has the burden of demonstrating the reasonableness and necessity of the fees . . . ."). NuVasive cannot meet this burden.

Third, the Court concludes, based on the record, it is highly unlikely the jury found Lewis liable based on the non-disclosure provision. The testimony at trial focused on whether Lewis violated her employment agreement by competing with NuVasive and soliciting Dr. Dryer. NuVasive's closing argument similarly honed in on these issues, not the non-disclosure aspect of the case. In light of this record, NuVasive's task in showing the jury found Lewis breached the non-disclosure provision is a difficult one, and NuVasive is unable to meet its burden.

Alternatively, the Court notes, even if NuVasive were entitled to attorneys' fees, the Court would not be inclined to award a significant fee, if any, for three main reasons. First, NuVasive's application, similar to Lewis's application, does not adequately segregate its fees. Specifically, NuVasive not only fails to separate the work related to the breach-of-contract claim from the rest of the claims, but further fails to separate the work related to the breach of the non-disclosure provision,

-13-

which forms the only basis for its recovery of fees.  Second, NuVasive's counsel should have known from the beginning this was a simple breach-of-contract case involving Lewis's violation of the non-compete and non-solicit provisions of her employment agreement.  Moreover, they should have determined there was a high probability of liability, making damages the only true issue in dispute. Counsel, however, complicated this simple case by over-pleading, over-discovering, and over-trying it, leading to excessive attorneys' fees racked up by both legal teams.  Third, and finally, NuVasive's counsel far overvalued this case as evidenced by settlement negotiations.  NuVasive's final pretrial demand was $1,500,000.00.  Lewis (along with Globus) offered NuVasive $1,000,000.00 to settle both the federal and state cases, but NuVasive rejected the offer, instead opting to take this case through a jury verdict which determined damages in the amount of $164,571.43.  Attorneys' fees of almost twice this amount ($315,209.03), as NuVasive now seeks, are plainly unreasonable.

In sum, NuVasive fails to meet its burden, and the Court DENIES NuVasive's motion for attorneys' fees.

## III.    NuVasive's Bill of Costs

NuVasive seeks $31,559.16 in costs as the prevailing party.  Under 28 U.S.C. § 1920, the following court costs may be recovered in federal court:

(1)    Fees of the clerk and marshal;

(2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)    Docket fees under section 1923 of this title;

-14-

(6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Federal Rule of Civil Procedure 54(d) also governs costs, and "contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). Allowable costs under Rule 54(d) are generally those delineated in § 1920, unless a particular statute authorizes other costs. *W. Wind. Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1234, 1236 (5th Cir. 1988) (Rule 54(d) "allows trial courts to refuse to tax costs otherwise allowable, but it does not give them the power to tax items not elsewhere enumerated"). The party seeking to recover costs bears the burden of proving the amount of the costs and their necessity. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

## A.    Fees for service of summons and subpoena

NuVasive seeks $2,913.08 for service of trial subpoenas and a subpoena to produce documents, but the Court denies these costs on a number of grounds. As an initial matter, § 1920(1) allows for fees of the clerk and marshal, and all of NuVasive's proposed service fees were paid to a private process server. *See* Bill of Costs [#176], Ex. B. Relatedly, NuVasive fails to explain why any of these subpoenas were necessary. *See Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 585 (W.D. Tex. 2010) (Sparks, J.) ("Because private process servers are not specifically enumerated in § 1920, which encompasses only fees paid to the United States Marshal for service of process, and because there was nothing special about the parties or the nature of this case, the Court finds the private process servers fees are not properly taxable as costs.") (citing *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)).   For instance, NuVasive reports

-15-

$261.25 for service of a trial subpoena on Laura Lewis on June 14, 2014. *See* Bill of Costs [#176], at 2. Lewis was the defendant in the case, and a simple notice to Lewis would have almost certainly been sufficient. NuVasive does not give a reason to the Court why a trial subpoena was required. Moreover, NuVasive reports another $261.25 for service of another trial subpoena on Laura Lewis on June 21, 2014. *Id.* at 3. Indeed, NuVasive reports three separate service of trial subpoena fees for Gregory E. Harris, Jr., and three separate service of trial subpoena fees for Jonathan Wilson. *Id.* at 2–3. The Court is unclear as to why all of these various trial subpoenas were necessary. As in *Honestech*, the Court finds there was nothing special about the parties or nature of this case, and NuVasive does not offer any reason why these fees should taxed against Lewis. Therefore, NuVasive's costs are reduced by $2,913.08.

**B.     Fees for printed or electronically recorded transcripts necessarily obtained for use in this case**

**1.     Trial and court proceeding transcripts**

NuVasive seeks $2,681.75 in costs for the trial transcript and $18.00 for the December 17, 2013 status conference hearing transcript. The Court does not find these costs were necessarily obtained for use in this case, and NuVasive provides no explanation to the contrary. Therefore, NuVasive's costs are reduced by $2,681.75.

**2.     Deposition transcripts and videos**

Costs related to taking of depositions are allowed under § 1920(2) and (4) "if the materials were necessarily obtained for use in the case." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999). "[A] deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case.'" *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir.

-16-

1991).  A deposition is necessarily obtained for use in the case "[i]f, at the time the deposition was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely discovery."  *Id.*  Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court.  *Id.* at 285–86.

In this case, NuVasive seeks $11,053.43 in deposition transcript and video costs.  *See* Bill of Costs [#176], at 4–5.  The transcripts obtained were for the depositions of Laura Lewis, Roger Yapp, Gregg Harris, Andrew Brett Murphy, Craig E. Hunsaker, Gary Durham, and Keith Valentine. While NuVasive does not provide any specific support indicating these transcripts were necessary for use in the case, the Court finds they meet this standard because each deponent was called as a witness at trial.  Therefore, the costs for these deposition transcripts are allowed.

NuVasive also seeks costs for videos of each of these depositions.  The Court fails to see how these costs were necessarily obtained for use in this case when the witness at issue actually appeared in person at trial, and the video deposition was not used.  *See Structural Metals, Inc. v. S & C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 3790450, at *4 (W.D. Tex. July 19, 2013) (declining to allow recovery of both paper transcripts and videos).  Therefore, the Court denies the costs for video fees concerning Lewis ($1,007.50), Harris ($535.00), Durham ($194.17), and Ugone ($325.00), and reduces NuVasive's costs by $2,061.67.  *See* Bill of Costs [#176], Ex. D.

## C.    Fees for witnesses

NuVasive seeks witness fees for travel expenses for witnesses Gary Durham and Roger Yapp, including their airfare, transportation, lodging, meals, tips, and parking.  As for airfare, a witness is required to utilize a common carrier at the most economical rate reasonably available.  *See* 28 U.S.C. § 1821(c)(1).  While NuVasive does not specifically justify any of its witness costs, the

Court finds Durham's $440.00 airfare to be reasonable. The Court, however, finds Yapp's $1,380.02 airfare (original fee of $1061.01 plus change fee of $200.00 plus difference in fare of $119.02) from Chicago to Austin to be unreasonable. At least a portion of this flight fee can be explained by the flight change, but NuVasive does not tell the Court why the original airfare was so expensive or why a flight change was necessary. *See* Bill of Costs [#176], Ex. E. The Court reduces NuVasive's costs by $780.02 to $500.00 for Yapp's airfare.

As for lodging, the Court will reduce hotel costs to the extent they exceed the per diem rate for Austin in July 2014, which was $126.00/night. *See* 28 U.S.C. § 1821(d)(1), (2) (a subsistence allowance shall be paid when an overnight stay is required, but it shall not exceed the maximum per diem allowance prescribed by the Administrator of General Services for federal government employee travel). The hotel cost for Durham's stay at the W Hotel was $269.00/night, which is $143.00 above the per diem rate. *See* Bill of Costs [#176], Ex. E. Therefore, the Court will reduce hotel costs for Durham by $286.00 ($143.00 times two nights). The hotel cost for Yapp's stay at the W Hotel was also $269.00/night, and the Court will similarly reduce hotel costs for Yapp by $286.00. *Id.* The Court will also reduce Yapp's lodging expenses for other extraneous fees included on his W Hotel bill, including $35.35 for "Living Room," $29.90 for "Wired" both nights, and $20.52 for "Munchie Box." *Id.*

As for Durham's transportation fees ($77.88 in cab fare) and meal fees ($35.58), the Court finds them reasonable. As for Yapp's transportation fees ($75.37), the Court finds them reasonable. The Court, however, will not permit Yapp $253.24 in meals, made up mostly of a $158.82 dinner at Uchiko. Yapp's meal costs are reduced by $217.66 to be the same as Durham's. Finally, the Court will not allow $87.00 in parking at the Chicago airport or $25 in tips, made up mostly of a $20

"tip to W driver." *Id.* There is no justification provided for why these costs were reasonable or necessary.

In sum, the Court reduces NuVasive's witness costs by $1,767.45.

**D.      Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case**

Pursuant to § 1920(4), NuVasive seeks to recover $11,193.38 in costs for copies, binder materials, and exhibit books at trial. *See* Bill of Costs [#176], at 7. The party seeking to recover such costs bears the burden of proving the necessity of the photocopies. *See Cessna Aircraft Co.*, 11 F.3d at 64. "Although prevailing parties do not have to justify every single photocopying cost, they do have to provide enough information for the Court [to be] able to make a reasonable determination of necessity." *Honestech*, 725 F. Supp. 2d at 584.

Here, NuVasive provides a number of invoices from various copy services. *See* Bill of Costs [#176], Ex. F. NuVasive, however, provides no specific proof of the necessity of these expenses beyond an affidavit from its Vice President of Legal Affairs. *See id.*, Ex. A (Garrett Decl.), ¶ 10. Without more information, it is impossible for the Court to determine whether the photocopying costs were necessary to the prosecution of this case. Therefore these costs in the amount of $11,193.38 are denied, and NuVasive's costs are reduced by this amount.

## Conclusion

The Court awards the following attorneys' fees and costs to Lewis as the prevailing party on the TTLA claims: (1) $10,000.00 in attorneys' fees; and (2) $90.58 in costs.

The Court awards the following costs to NuVasive as the prevailing party in the case: (1) $8,991.76 in fees for deposition transcripts and videos; and (2) $1,932.07 in fees for witnesses for a total of $10,923.83.

Accordingly,

IT IS ORDERED that Defendant Laura Lewis's Application for Attorneys' Fees and Costs [#171] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FURTHER ORDERED that Defendant Laura Lewis does have and recover attorneys' fees against Plaintiff NuVasive, Inc. in the amount of TEN THOUSAND DOLLARS ($10,000.00), for which let execution issue;

IT IS FURTHER ORDERED that the Clerk SHALL assess costs of suit against Plaintiff NuVasive, Inc., in accordance with this opinion, in the total amount of NINETY DOLLARS AND FIFTY-EIGHT CENTS ($90.58);

IT IS FURTHER ORDERED that Plaintiff NuVasive, Inc.'s Motion for Attorneys' Fees and Costs [#175] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FURTHER ORDERED that Plaintiff NuVasive, Inc.'s Bill of Costs [#176] is PERMITTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FINALLY ORDERED that the Clerk SHALL assess costs of suit against Defendant Laura Lewis, in accordance with this order, in the total amount of TEN THOUSAND NINE-HUNDRED AND TWENTY-THREE DOLLARS AND EIGHTY-THREE CENTS ($10,923.83).

SIGNED this the _22_ day of October 2014.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE